UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| WESLEY MCANALLY, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, § § § § § PLAINTIFF § § § v. § § ELITE FIBER, LLC, JOHN § MUSCHALEK AND LINDA § MUSCHALEK, INDIVIDUALLY, § § DEFENDANTS § | CA NO. 5:24-cv-1393-JKP-HJB |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Wesley McAnally ("Named Plaintiff"), on behalf of himself and all others similarly situated (Named Plaintiff and those similarly situated are collectively referred to as "Plaintiffs") brings this Fair Labor Standards Act ("FLSA") suit against Elite Fiber, LLC, John Muschalek, and Linda Muschalek, Individually ("Defendants") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended.

### I. NATURE OF SUIT

1. Defendants John and Linda Muschalek, and their company Elite Fiber, LLC, have a business plan that includes hiring fiber optic technicians ("technicians"), purposefully misclassifying them as independent contractors, and refusing to pay them overtime compensation when they work more than forty hours per week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

2. Defendants engage in this course of action to keep the money they would otherwise be required to pay their technicians under the FLSA, allowing them to gain an unfair advantage over competitors who pay their employees correctly.

3. Indeed, Defendants did not attempt to hide this illegal behavior. Instead, they brazenly announced to new hires, including Plaintiffs in this action, "We do not pay overtime."

4. Defendants' flouting of the FLSA eventually attracted the attention of the Wage & Hour Division of the Department of Labor, who found that Defendants were in violation of the FLSA.

5. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and the Defendants' illegal compensation policies, Named Plaintiff brings this action as an opt-in collective action pursuant to 29 U.S.C. § 216(b).

## II.  PARTIES

6. Named Plaintiff Wesley McAnally is an individual residing in this judicial district. His notice of consent has already been filed.

7. At all relevant times, Named Plaintiff McAnally was an "employee" of Defendants as defined by the FLSA.

8. At all relevant times, all Defendants were McAnally's "employer" as defined by the FLSA.

9. Plaintiffs are Defendants' current and former fiber optic technicians who were misclassified as independent contractors, paid on an hourly basis and who were not paid overtime premiums for any hours worked over forty in a workweek.

10. Defendant Elite Fiber, LLC is a domestic corporation formed and existing under the laws of the State of Texas.

11. Defendant Elite Fiber, LLC was an employer of Named Plaintiff McAnally and those similarly situated as defined by 29 U.S.C. §203(d).

12. Defendant Elite Fiber, LLC has already made an appearance in this matter.

13. Defendant John Muschalek, the owner of Elite Fiber, LLC, operated and managed Elite Fiber LLC in conjunction with his wife, Linda Muschalek.

14. Defendants John Muschalek and Linda Muschalek were both employers of Named Plaintiff McAnally and those similarly situated as defined by 29 U.S.C. §203(d).

15. Defendant John Muschalek has already made an appearance in this matter.

16. Defendant Linda Muschalek has already made an appearance in this matter.

17. At all times hereinafter mentioned, John Muschalek and Linda Muschalek exercised managerial responsibilities and substantial control over Elite Fiber, LLC's employees, including Named Plaintiff McAnally, and the terms and conditions of their employment.

18. Indeed, even though Linda Muschalek represents to this Court that she was not an "employer," her own words tell a very different story.

19. For example, Linda Muschalek, in a group text to the technicians, scolds the techs for disobeying her direct order to leave work early so that they could catch up on their sleep in order to be available to work the next day to help restore an electrical outage, which required significant numbers of man hours.

20. In the same group text, she reminds the technicians that the owner, Defendant John "Jace" Muschalek, had been up for two straight days, intimating that the technicians should be working at least as hard as Mr. Muschalek.

21. Linda Muschalek then informs the technicians that "*your only bosses are Jace, Raul and I*" (emphasis added).

22. In a subsequent group text sent later that same day, Linda Muschalek ordered the technicians to remain in the field until dispatch is finished giving out tickets, noting that this directive "includes

everyone! Is this clear?" Both group texts are set forth below, and both texts were (as were all texts set forth in this Amended Complaint) received by the Plaintiffs in this lawsuit.



23. In another group text, Linda Muschalek repeats that field tech behavior was again unacceptable and that should a field tech "drop out" of the field without informing dispatch, they would be suspended for a week:



24. John Muschalek then follows up Linda Muschalek's warning by reminding the technicians that it is very important that Defendants have "full accountability at all times."

25. Linda Muschalek also exercised control over what days the technicians could take off, as reflected in the following group text message explaining that technicians scheduled to work on the weekend of April 20th could not ask to be relieved from work that weekend, stating that this was "non negotiable."



26. In another group text, this one authored by Defendant John Muschalek, he warns the technicians that they are required check in with either himself, Linda Muschalek, or a supervisor named Raul prior to 8:00 am if they were going to miss work for any reason, or they would be considered a no call no show.   Mr. Muschalek also states that this directive applied to late log ins as well:



27. Linda Muschalek was intimately involved in the day to day operations of Elite Fiber. In the following group text message sent to the technicians, she can be seen making decision about the creation of teams of employees, explaining to the technicians that the fact that they are now going to be on call every three weeks (at her suggestion) is not a punishment, it is "business to keep *our* contract" (emphasis added). John Muschalek responds to Linda's "suggestion" by agreeing with her and noting that the technicians "really don't have much choice" in the matter. And this was true; Defendants made the rules, and they expected Named Plaintiff and those similarly situated to follow them.



28. Aside from monitoring and directing the work of technicians, threatening the technicians with suspensions, announcing rules about when technicians could leave for the day and when they could seek time off, creating teams and on call schedules, Linda Muschalek also publicly claimed ownership in Elite Fiber, as in this ad she posted seeking employees for Elite Fiber, announcing that "*Our* company Elite Fiber is hiring!" (emphasis added).  In the post below, Linda Muschalek describes the duties the job candidate would have, the requirements for the job, and explains that the job candidate could choose to work in either San Antonio or Austin:



29. In another Facebook post, Linda Muschalek again announces that Elite Fiber is hiring, stating "*we* have numerous positions…*we* are hiring…*we* are expanding…It's so great to grow and I'm excited for *our* future!" (emphasis added).



30. John Muschalek and Linda Muschalek had and exercised the authority to hire, fire and direct Elite Fiber, LLC's employees, including Named Plaintiff McAnally.

31. Plaintiffs were hired directly by John Muschalek.  As set forth above, both John and Linda Muschalek threatened to discipline the technicians on multiple occasions, and John and/or Linda Muschalek disciplined and fired technicians.

32. As demonstrated above, both John Muschalek and Linda Muschalek had and exercised the authority to direct, supervise and control the employment relationships and work schedules of Elite Fiber, LLC's employees, including Named Plaintiff McAnally.

33. The group text below reflects John Muschalek first asking for volunteers to go back out in the field, and then stating that Team 2 would be required to provide coverage if there were no volunteers:



34. Named Plaintiff and those similarly situated were all given start times each day where they were required to be in an assigned location and ready to work, typically at 7:00 am or 8:00 am in the morning.  Named Plaintiff and those similarly situated were required to continue work until they completed all work tickets that they had been assigned.

35. Linda Muschalek was in communication with Plaintiffs on a daily, sometimes hourly basis, issuing orders, instructions, and directions to the technicians.

36. Linda Muschalek monitored Plaintiffs' work constantly throughout the day, reviewing photos and work descriptions submitted by the technicians on their work chats.  If Linda Muschalek felt that

a particular job was not performed properly or in a manner satisfactory to her, she would direct the technicians through their work chats to go back and redo the work until they performed it to a level that she deemed acceptable.

37. John Muschalek and Linda Muschalek had and exercised the authority to set and determine the rate and method of pay of Elite Fiber, LLC's employees, including Named Plaintiff McAnally.

38. John Muschalek set Plaintiffs' rates of pay. He did not negotiate with Plaintiffs, nor was there any opportunity for Plaintiffs to bargain or try to set their own rates of pay. John Muschalek simply told each Plaintiff what Defendants would pay them per hour, and if Plaintiffs wanted the job, they could either accept the offered rate or look for employment elsewhere.

39. Both John Muschalek and Linda Muschalek had and exercised the authority to decide whether Elite Fiber, LLC's employees, including Named Plaintiff McAnally, received overtime compensation. In setting Plaintiffs' rates of pay, John Muschalek made it very clear to Plaintiffs that Defendants did not pay overtime.[1]

40. John Muschalek and Linda Muschalek also kept and maintained employment records for all employees of Elite Fiber, LLC, including Named Plaintiff McAnally.

### III.  JURISDICTION AND VENUE

41. This Court has subject matter jurisdiction in this matter because Named Plaintiff asserts claims arising under federal law. Specifically, Named Plaintiff asserts claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. Therefore, this Court has subject

---

[1] In its subsequent investigation of Defendants, the Wage and Hour Division of the Department of Labor disagreed with John and Linda Muschalek and found that Defendants were in fact obligated to pay Plaintiffs overtime. When Defendants refused to pay any of the penalties the DOL assessed against them, this lawsuit resulted.

**Plaintiff's First Amended Complaint**                                                                 Page 10

matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has personal jurisdiction over all parties to this action.

42. The Court has personal jurisdiction over Defendants because Defendants conduct business in Texas and have entered into relationships with Plaintiffs in Texas and have committed actions in Texas that give rise to this cause of action.

43. Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this cause of action occurred in this District and Division. Inasmuch as Defendants are subject to this Court's personal jurisdiction for purposes of this civil action, Defendants reside in this judicial district. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

## IV.  COVERAGE UNDER THE FLSA

44. At all relevant times, Defendants have acted, directly or indirectly, in the interest of an employer with respect to Named Plaintiff and those similarly situated.

45. At all relevant times, Defendants have been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

46. At all relevant times, Defendants have been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

47. At all relevant times, Defendant Elite Fiber, LLC has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant Elite Fiber, LLC is an enterprise and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or

business done of not less than $500,000 (exclusive of excise taxes at the retail level which is separately stated).

48. Named Plaintiff and those similarly situated handled and otherwise worked with equipment, such as telephones, computers and fiber optic cables, that have been moved in or produced for commerce as defined by 29 U.S.C. §203(b).

49. Named Plaintiff and those similarly situated installed fiber optic cables that transmit signals and information that originates outside the state of Texas and/or is transmitted to locations outside the state of Texas.

50. At all times, Named Plaintiff and those similarly situated were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207 and whom Defendants at all relevant times "employ[ed]," within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

## V. FACTUAL ALLEGATIONS

51. Defendants operate a company that specializes in servicing, troubleshooting and repairing fiber optic cable in and around Bexar County and Travis County. Defendants employ fiber optic technicians, among other employees, to service and repair fiber optic cable for their customers.

52. Named Plaintiff McAnally and those similarly situated were not employed by Defendants on a project by project basis. Instead, Named Plaintiff McAnally and those similarly situated worked continuously and exclusively for Defendants. Because of the sheet number of hours Defendants demanded, none of the technicians had time to work for any other employer. Named Plaintiff McAnally and those similarly situated also worked for Defendants for consistent, uninterrupted periods of time, often exceeding one year.

53. Defendants provided weeks of training to Named Plaintiff McAnally and those similarly situated, with training typically lasting anywhere from two to five weeks.

54. Defendants exercised significant control over Named Plaintiff McAnally and those similarly situated, including, as demonstrated above, directing their work and requiring that they remedy work perceived as improperly performed, instructing and warning them about following Defendants' rules and regulations, ordering them to stay in the field until all tickets had been finished, telling them when they were mandated to return to work, or what weekends they could not take off, telling them when and where to report to work, and by establishing specific schedules, such as the schedule distributed by Raul, one of Plaintiffs' supervisors:



**Plaintiff's First Amended Complaint**    Page 13

55. Named Plaintiff McAnally and those similarly situated had little to no control over their opportunity for profit and loss aside from simply working more hours, which, under Fifth Circuit law, is insufficient indicia of independent contractor status. *See, e.g., Faulkner v. Patterson-UTI Drilling Co., LLC*, 2014 WL 12567150, at *3 (E.D.Tex.2014) (welders were found not to control their profit and loss where 1) the company paid a nonnegotiable hourly rate, 2) the company controlled the number of hours the welders worked, and 3) "regardless of whether any [p]laintiff was strictly prohibited from welding elsewhere while working at [defendant], the company's rigid work schedule severely constrained any opportunity to seek or secure other welding jobs."

56. Throughout their employment with Defendants, Named Plaintiff McAnally and those similarly situated consistently worked more than forty hours per workweek.

57. Named Plaintiff McAnally never received overtime premiums for any hours worked over forty per workweek.

58. Instead, Named Plaintiff McAnally was paid straight time for all hours worked, even those above forty per work week.

59. Defendants regularly refused to pay Named Plaintiff McAnally overtime premiums for any hours worked over forty per work week, even though he worked, on average, approximately 60 hours per work week, sometimes more.

60. This was in keeping with Defendants' clearly stated policy, communicated to all employees upon being hired, that Defendants did not pay overtime compensation.

61. Although they consistently worked very long hours, well over forty hours per work week, Plaintiffs were not properly compensated for their overtime hours.

62. Defendants required Plaintiffs to work the long hours described above and thus knew that Plaintiffs regularly worked in excess of 40 hours per work week.

63. However, Defendants failed and refused to pay Plaintiffs time-and one-half their regular rates of pay for all hours worked over 40 in a work week.

64. Defendants have employed and are employing other individuals who have performed the same job duties under the same pay provisions as Named Plaintiff McAnally, in that they have performed, or are performing, the same job duties and have been denied overtime compensation at a rate of one-and-one-half times their regular rates of pay for all hours worked over forty per workweek.

65. Defendants' disclaimer to its employees that it did not pay overtime is evidence of Defendants' knowledge and attempted avoidance of the overtime protections contained within the FLSA. Defendants have knowingly, willfully, or with reckless disregard carried out, and continue to carry out, their illegal pattern or practice of failing to pay Named Plaintiff McAnally and those similarly situated overtime premiums for all hours worked over forty per workweek.

## VI.  COLLECTIVE ACTION ALLEGATIONS

66. Named Plaintiff McAnally and those similarly situated have performed the same or similar job duties as one another.  Further, Named Plaintiff McAnally and those similarly situated were subjected to the same pay provisions in that they were not paid overtime premiums for any hours worked over forty per workweek.  Thus, those similarly situated are owed one and one-half times their properly calculated regular hourly rate for all hours worked over forty in a work week without regard to their individualized circumstances.

67. Defendants have a policy or practice of not paying their fiber optic technicians for any hours worked over forty per workweek.  This policy or practice is and has been, at all relevant times, applicable to the Named Plaintiff and all those similarly situated.  Application of this policy or

practice does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit. Rather, the same policy or practice that resulted in the refusal to pay overtime premiums for any hours worked over forty per workweek to Named Plaintiff also applies to all those similarly situated. Accordingly, those similarly situated are properly defined as:

> **All current and former fiber optic technicians paid by Elite Fiber, LLC on an hourly basis who were not paid overtime premiums for any hours worked over forty per workweek.**

## VII.  CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

68. During the relevant period, Defendants have violated and are violating Section 7 of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for all of their work in excess of forty hours per week at rates no less than one-and-one-half times their correct regular rates for which they were employed. Defendants have acted willfully in failing to pay Plaintiffs in accordance with applicable law.

69. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the correct regular rate at which their employees are paid are applicable to the Named Plaintiff or those similarly situated.

## VIII.  PRAYER FOR RELIEF

Named Plaintiff Wesley McAnally and those similarly situated pray for an expedited order directing notice to all those similarly situated pursuant to 29 U.S.C. § 216(b), and, upon trial of this cause, judgment against Defendants Elite Fiber, LLC, John Muschalak and Linda Muschalek, jointly and severally, as follows:

      a.      For an Order pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendants liable for unpaid back wages due to Named Plaintiff (and those who may join in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Named Plaintiff (and those who may join the suit);

      b.      For an Order awarding Named Plaintiff (and those who may join in the suit) the taxable costs and allowable expenses of this action;

      c.      For an Order awarding Named Plaintiff (and those who may join in the suit) attorneys' fees;

      d.      For an Order awarding Named Plaintiff (and those who may join in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

      e.      For an Order awarding Named Plaintiff declaratory and injunctive relief as necessary to prevent the Defendants' further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*.; and

      f.      For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

       Respectfully submitted,

       Welmaker Law, PLLC

       */s/ Douglas B. Welmaker*
       Douglas B. Welmaker
       Attorney-in-Charge
       State Bar No. 00788641
       409 N. Fredonia, Suite 118
       Longview, Texas 75601
       (512) 799-2048
       Email: doug@welmakerlaw.com

       THE BUENKER LAW FIRM

       */s/ Josef F. Buenker*
       By: Josef F. Buenker
       TBA No. 03316860
       P.O. Box 10099
       Houston, Texas 77206
       713-868-3388 Telephone
       713-683-9940 Facsimile
       jbuenker@buenkerlaw.com

       **ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing First Amended Complaint has been electronically served on all counsel of record via Notice of Electronic Filing on a known Filing User through the CM/ECF system on April 25, 2025.

       */s/ Douglas B. Welmaker*
       Douglas B. Welmaker